Case number 24-7185. United Mexican States v. Lion Mexico Consolidated L.P. Hector Cardenas. Mr. Becker, court-balanced United Mexican States. Mr. Parada, court-balanced Hector Cardenas. Mr. Conlon, court-devoid. Good morning, Mr. Becker. Good morning. May it please the court, I am Stephen Becker from Pillsbury-Winthrop Shaw Pittman, representing Petitioner of the United Mexican States. We believe there's two key issues raised here. First, when the relevant language of an arbitration agreement is clear and unambiguous, can arbitrators disregard that language by purporting to do an interpretation? And second, does a reviewing court have the discretion to repair a defective award by recharacterizing its language and setting out new reasoning on behalf of the arbitrators? Obviously, we think the answer to those questions is no. With regard to the first point, we think allowing arbitrators to avoid clear language would be inconsistent with the Supreme Court statement in MISCO that the arbitrator may not ignore the plain language of a contract. Other courts have agreed that if the language is clear, arbitrators cannot make interpretations. For example, in Excel, the Eighth Circuit stated when the language of the contract is clear and unambiguous, the arbitrator may not rely on parole evidence. The Eighth Circuit also stated in Missouri River that an arbitrator cannot rewrite the contract and add new terms, which is what happened here in this case. The Seventh Circuit has similarly ruled in U.S. Soccer Federation and Anheuser-Busch that an arbitrator cannot declare an ambiguity when none exists. Article 11501 is clear and unambiguous, and the Tribunal itself acknowledged its literal reading. The obligation in 11051 refers to treatment of investors, I'm sorry, refers to treatment of investments. Other obligations in the same chapter, indeed, in the same section, refer separately to treatment of investors and investments. But the Tribunal's, go ahead. Can you think of an example of an instance where a country violates 11051 and that violation is challenged in arbitration? Sure, there have been dozens of cases that have challenged violations of Article 1101. And appropriately challenged a violation? Yes, there have been arguments. What's an example of one? The Lohan versus United States case, arguing that U.S. courts denied justice to the subsidiary, U.S. subsidiary of a Canadian company. Who brought that arbitration? Arbitrations have to be initiated by the investor, and they could bring claims either under Article 1116 on behalf of themselves and or under Article 1117 on behalf of an enterprise that they own or control in the other country. So that's what I would have guessed, is that an investor brought that arbitration in order to vindicate the protection of investments in 11051. Exactly, to vindicate the investment, its investment being a U.S. company. Yeah, so I thought that's what the other side saying is allowed and happened here. And I thought your argument was that an investor cannot vindicate 11051 because 11051 protects investments, not investors. The issue we went to the district court conflated the issue of how to initiate an arbitration, the rules for that, and the legal standard that applies. The issue with Lyon was that it was arguing about the treatment of itself as an investor in the Mexican courts, not the treatment of an investment. And the NAFTA parties have been very clear that 11051 only applies to the treatment of investors. The arbitrators and the district court found that it was actually the treatment of the investments that was being reviewed. No, your honor, all the arguments in the arbitration award related to the treatment of Lyon, Mexico in the U.S. courts. I'm sorry, in the Mexican courts. But it was the treatment of their investments. No, it was the treatment of them. They complained that the Mexican courts didn't treat them appropriately by not giving them opportunity, sufficient opportunities or ruling in their favor on various issues. Maybe the opposing counsel can address this, but my understanding is they were complaining that we were mistreated as investors, but in light of mistreated in our protection of the investments. But, your honor, that's not what the arbitration agreement provides for. There are other provisions in chapter 11 that expressly state that the obligations are owed to investors. So, for example, in article 11052. I read it. Okay, yeah, you've seen it. And I mean, the district court was all over this in the decision, in her decision, but also in the argument, the oral argument, the hearing. And I mean, I think if it seems like you're backing away from, or maybe you never made the argument that 1101, 11051 must be read so literally that only an investment can initiate arbitration to protect it. No, you're saying, of course, an investor can initiate the arbitration to protect an investment. And so then really just the arbitration panel is really just trying to figure out, okay, was this a Mexican court's mistreatment of an investment or mistreatment of an investor? And that just seems like heartland decision for an arbitration panel to decide, not for a court to come in and say, oh, no, you weren't even interpreting the arbitration agreement. Your Honor, the problem is that the, in effect, the arbitrators added new words to Article 11051. They added, add investors, or they modified the express definition of investments to include investors. And there are specific definitions of investment and investors, which would disregard it. It's very strong evidence that the tribunal did consider investments insofar as it dismissed Lyons claims related to promissory notes on the ground that the promissory notes are not investments under NAFTA. Why isn't that very strong evidence that the tribunal properly focused on the nature of the investments and not only on the owner? The issue is the preliminary sharing or preliminary phase on jurisdiction related to, excuse me, I have to say I'm trying to reserve one minute for rebuttal and I see I'm out of time. I hope I can continue. You may. Okay, thank you. The issue in the preliminary jurisdictional phase was whether Lyon, Mexico had an investment within the meaning of the NAFTA to begin with. And so Mexico argued that the mortgages and the notes were intertwined. The notes were for a term of less than three years, which under the definition of investment doesn't qualify as a covered investment. The tribunal decided to separate the mortgages from the notes and they said, okay, the notes aren't an investment, but we'll hold that the mortgages qualify on the basis that they are intangible real estate. Well, so they're looking at the nature of the investment, applying article 11051 to protect the investments. No, excuse me, Your Honor. Lyon, Mexico brought multiple claims. It argued that there had been an expropriation. It argued other issues. So 11051 was one of several alternative claims. If we were talking about if the tribunal had made a ruling on expropriation, this issue about the difference between investments and investors would be irrelevant. Right. Right. But the tribunal decided not to address that claim. I'm not sure how that supports your argument, though. I'm saying the people are suggesting, the lower court was suggesting, I have to fix 11051 to give these people an opportunity to bring a claim. The response is there are several alternative bases upon which people can bring claims, including denial of national treatment, expropriation, et cetera. Right. So the rule about what's an investment applies in all of those contexts. That gets to whether you have standing to bring a claim, any claim to begin with. It's not inextricably tied just to the issue of 11051. Judge Childs, you have any questions? Well, just when he's, you're pushing us to a literal reading and suggesting that somehow the arbitrator goes beyond their power, but what about how much deference you give to the arbitrator's interpretation generally? Your Honor, there's a distinction in the cases between situations in which language is ambiguous, and then there's great deference to the arbitrators in interpreting ambiguous language, and other cases in which the language is clear and unambiguous, which is our position here. There is no reasonable manner in which the 11051 can be read to discuss treatment of investors. It's simply precluded by the definitions, by the clear language, even the Federal Trade Commission interpretive statement that was cited specifically says 11051 prescribes the customary international law minimum standard of treatment of aliens as the minimum standard of treatment to be afforded to investments. But I don't take line to the arguing that we should read it to apply to investors. I think they're saying that the tribunal appropriately treated it as applying to investments, and so what in the tribunal's decision most clearly shows support to your position, that they actually lost sight of the focus on participating investments. And obviously, if you protect an investment, you help the owner of that investment, and that's just unavoidable. Yes, but the point of NAFTA Chapter 11, it has very narrowly prescribed circumstances in which a claim for damages can be brought, and that's what we're talking about here. There's no general right to sue foreign governments for money under international law. The terms are prescribed here, just as they might be in the Federal Tort Claims Act. Not all government misconduct is entitled to financial compensation. The key point in response to your question, however, is the tribunal expressly said, the tribunal finds that NAFTA Article 1105 doesn't grant protection to lion as an investor. That's on page JA 110. They were very clear. I think people now, sorry, excuse me. No, I was just going to say, you seem to believe that the interpretation is wrong, but not that it did, not that the arbitrator did not interpret the treaty. I think the arbitrator, we think the arbitrators made a fake interpretation. I think the expression is noises of contract interpretation, because they cited items like the Free Trade Commission interpretation that don't support their conclusion. But our main point is that when the language is clear, is not reasonably capable of being read in another manner, the arbitrator should not have engaged in an interpretation. Okay. Any other questions? All right. We'll hear now from Mr. Parada. Good morning, your honors. May it please the court. My name is Luis Parada for moving appellant Hector Cardenas. Mr. Cardenas is an integral part of this dispute. So much that because of what the arbitral award said about him, if Mexico is forced to pay the 77 million dollars, Mr. Cardenas himself is going to have to reimburse that money to Mexico. This is why he moved to intervene under Article 20, but under Rule 24 of the Federal Rules of Civil Procedure to support Mexico's petition to vacate the award with two additional arguments. One of these arguments deals about jurisdiction, the other one about due process to him. This court denied Mr. Cardenas' motion to intervene on three different grounds. I'm going to address only one, futility, because of the impact it has beyond this case. This court ruled that even if Mr. Cardenas complied with all the requirements under Rule 24, he would not be allowed to intervene because intervention would be futile because the courts of the U.S. cannot review issues of jurisdiction. While it is true that most, if not all, arbitration rules reserve or indicate that the arbitrators have the power to decide on jurisdiction, that does not mean that arbitrators have the sole power that they have the last word on jurisdiction, because as a general matter, an arbitral award is subject to further review. In arbitrations under the Exit Convention, like this court has seen many, the Exit Convention itself has its own mechanism to review awards by tribunals, including decisions on jurisdiction, and to annul those awards when they, for example, exceed their powers. But Mexico actually defended against the arbitration award, and so I understand you to mean that your argument is that your interest is distinct based on this jurisdictional claim, but that sounds like maybe that's more of a litigation strategy? No, no, Your Honor. Mexico could not have possibly made this argument on vacator because they failed to make it during the arbitration. Would you be seeking vacator of the entire award or a partial modification? Vacator of the entire award. And Your Honor, does that not prejudice everybody already in this litigation for, what, a decade? Could you please repeat the beginning? How does that not prejudice everybody who's already been in this litigation? Well, the one that is really prejudiced here is Mr. Cardenas because he's the one who's going to have to end up paying the $77 million award if it is enforced, and he was not even allowed to be— the representatives of the tribunal made very serious findings against him, blaming him basically for committing fraud and orchestrating a fraudulent scheme, forging documents without him being present. And he, because of that, for example, the state of Nayarit, where one of the properties that was in the joint, supposedly joint investment is located, has already started expropriation proceedings against this property, which is valued at more than $800 million. So the prejudice is to Mr. Cardenas. Mr. Cardenas is only asking for due process. But Mr. Cardenas was aware of the arbitration and the district court held that he didn't seek timely to participate there. You fault Mexico as a representative of the same interest by saying they failed to raise any objection. The jurisdictional objection in the arbitration, well, so did Mr. Cardenas fail to raise any jurisdictional objection or any objection whatsoever in the arbitration. That was a decision that he made thinking, I can rely on the existing parties. But that's a choice that he made that he has to live with. Respectfully, that is not correct, Your Honor. In international arbitration, it's not like here that people can be hearing us live and can read the transcript, can be hearing a recording, they can be present here in the courtroom. This arbitration was under closed doors. It was not public. All the more reason that Mr. Cardenas might have thought, I need to be there because I cannot otherwise monitor. There's no right. There's no right, but you know that you can petition to address a tribunal. He had his lawyer, Mr. Ivan Mercado, petitioned five times. Not for himself. For his companies. Because Mr. Mercado is a lawyer and Mr. Cardenas is not. So the one that would have to be before the tribunal would be Mr. Mercado for raising the issue of jurisdiction, which related to his cases that he had. But he petitioned for a different party, not for Mr. Cardenas. For Mr. Cardenas' companies. I mean, the thing is, the problem here is not that he was not present. The problem is that he was not present. And the tribunal made very serious findings against him in his absence. And that is violation of due process. But his lawyer knows that arbitration and the business community has fought for and prevailed in this, that there needs to be finality. So there's very, very limited review as we face today here. If they arguably interpreted the contract, then that's enough. And so anyone who has interest that may be seriously implicated in an arbitration would do well at least to preserve the effort to intervene in the arbitration, no? To petition to be there. Because as you say, once it's done, the reasoning is not subject to much review at all. It is, ma'am. Pardon? The ruling is subject to review under section 10 of the federal arbitration. It's a very limited review, as we all know.  It's very limited, yeah. In exit arbitrations, this award, this arbitration, if it were held now, it would be under the exit convention because now Mexico is party to the exit convention. This decision, this award would be reviewable by an anomaly committee, by an ad hoc committee for excess of powers. And they would decide if the tribunal exceeded its powers and they could annul this. The same is true for an arbitration under the additional facility rules, especially because the courts of the federal courts of Washington, D.C., are the courts of the seat of the arbitration. Only the district court can vacate an award, and this is what we have. Didn't Mr. Becker say anything today that you disagree with? No, he did not. Is there anything in his brief that you disagree with? No, no, I think Mexico's argument is correct. Sounds like your interests were pretty well represented. No, it was not, because we have the additional two issues, due process and jurisdiction are personal to Mr. Cardenas, and they are arguments that Mexico cannot make. Because actually Mexico was participant in the violation of due process against Mr. Cardenas by, one, not calling him as a witness, not even wanting to meet with him. And actually, I'm sure you have read the briefs, Mexico threw Mr. Cardenas under the bus. And that's what Mr. Cardenas has to now, before the court that is deciding petition to vacate the award, under the Federal Arbitration Act, Section 10, Mr. Cardenas appeared to you to finally get the opportunity to have a due process. Otherwise, the government of Nayarit is already there for a year and a half with an expropriation process to expropriate an $800 million property. Supposedly, because of what Mr. Cardenas did, isolation of the award, Mexico has not moved a finger to stop the government of Nayarit. Mr. Cardenas is fighting for his own right to due process, which is not being deprived of life, liberty, or property with a due process of law. And this is what he has been suffering. He just wants to have his day in court. He hasn't had it yet. And not because of his fault. Again, the problem is not that he was not present. The problem was that not being present, the tribunal made very definite and damning findings of fact against him that are being used against him to deprive him of substantial property. All right. Thank you. And we next hear from Mr. Conlon. May it please the court. I think I'd first like to address one of the arguments that Mr. Becker made about investment of investor and whether what the tribunal did here was consistent with Article 11051. Before the proceedings that were commenced here was because Lion Mexico's mortgages were canceled and Lion Mexico was unable, was not given the opportunity to challenge the cancellation of those mortgages. So this started with an investment. Before the tribunal, Mexico argued that an investor of a party may not bring a claim on behalf of an investment unless the investment is an enterprise of another party that is a juridical person that the investor owns or controls directly or indirectly. Now, investment is defined in Article 11 under 1139. There is eight different categories of investments. The investment at issue here is a mortgage. And that was the tribunal held that it was an intangible interest in real property. Pursuant to Mexico's argument, seven of the eight categories of investments cannot be protected by an investor under 11051 in a NAFTA proceeding. So that was the question presented to the tribunal. How does the tribunal give effect to the purpose of 11051, which is to protect investments if seven of the eight listed investments are not subject to protection as Mexico argues? As the court noted, judicial review of international arbitration awards is extremely limited. Courts don't sit to hear claims of factual or legal error by an arbitrator as they would in reviewing decisions of lower courts. Even if the tribunal was incorrect in its analysis, that is not sufficient. If the tribunal even arguably interprets the contract, or in this case, a treaty, it must be confirmed. The tribunal found that the conduct of Mexican courts in cancelling Lyon-Mexico's mortgages without notice and refusing to grant Lyon-Mexico an opportunity to present evidence to demonstrate that the mortgages were canceled as a result of fraud violated both Mexican procedural rules and elemental principles of due process under international law. Let me ask you, Mr. Conlon, in the arbitration proceeding, and I know there's not a transcript of that, but did Lyon ever advance the argument that Article 11051 protects it as a foreign investor from unfair treatment, even when that unfair treatment is not tied in any way to a particular investment? Lyon-Mexico argued that under the circumstances of this case, in order for its investment to be protected, Lyon-Mexico needed to act on behalf of that investment. It was not a juridical entity. It could not do anything on its own to protect its rights in the Mexican legal system. So it addressed this juridical entity argument, but it was making assertions there to protect the mortgage investment. Correct. Correct. Because there's only one, under the definition of investment, which is an enterprise, that's the only type of investment that is a juridical entity. The others include like equity securities, debt securities, a loan. None of those other defined investments are juridical entities able to act on their own behalf. There's no dispute here about the factual findings of the tribunal. There's no dispute that the mortgages at issue here are protected investments under NAFTA 11051. What about the timeliness? Why isn't the timeliness taken care of by—because Cádenas is not really asserting a separate cause of action. It wants to participate because it sees Mexico not advancing some of the arguments it would want to make, and Mexico has timely raised the substantive claim. So why is there a timeliness problem? With respect to intervention? Well, for several reasons. One, the Federal Arbitration Act gives a hard three-month deadline. He missed that by eight months. Secondly, he's looking to interject entirely new issues that were considered and rejected by Mexico in terms of raising them before the tribunal. Well, the jurisdictional argument was raised before the tribunal by Mr. Mercado. Neither the tribunal nor Mexico wished to pursue that. Mr. Mercado was not allowed to proceed because he did not provide necessary detailed information about his personal background and his standing to participate as a non-participating party. So— But in terms of the timeliness, if the jurisdictional issue was—there's not any sandbagging or belatedness. If Mexico's in, the issue's been put on the table in a timely manner, then why doesn't Cardenas' participation kind of date back and say—as you said, they're kind of leaving the jurisdictional issue aside. They didn't want to pursue, but he does. So just in terms of timeliness of intervention, everyone knew what they were up against. Right, but it would have the perverse consequence of issues being considered by a state party here in Mexico, them choosing not to raise that issue. Yet some intervener could raise an issue that's only for Mexico to raise and justify bringing that up for the first time in a reviewing court, such as the district court, when it shows as a tactical matter not to raise it before the tribunal. Likewise, the due process concern, there's no due process here. But doesn't that go—when you say it's only for the state to recognize, doesn't that go to the merits of his claim that, you know, he's not bound by this arbitration judgment and— Cardenas? Yeah. Yeah, he's not bound by this arbitration judgment. There's been no submission—there's a statement that he's required to indemnify Mexico for this judgment. There's nothing in the record to that effect. Right. And in terms of, you know, due process, which he raises, he can't be bound by a process that he wasn't a participant in. Correct. And he makes no argument that there's any res judicata effect, there's any collateral estoppel effect from this judgment. This award may well have been cited in different proceedings in Mexico, but that does not give him the right to now upend the appeal. He—in his motion to intervene, he says that he's not looking to challenge the factual record that was asserted by the court. So what is the purpose of—you know, what rights are being validated in the proposed motion where he's denied due process if he's not challenging the factual record? And because—this is similar to what Judge Pillard was saying, what you were saying, but because he was not party to the arbitration, he has at least left open the possibility that when Mexico or someone comes after him for money and attempts to use the arbitration decision against him, he's left open the possibility that it shouldn't apply against him because he wasn't a party to it. Correct. So his decision to not join the arbitration may have been a very self-serving strategic decision. Right. A tactical decision to try and get two bites at the apple. Right. Or to be able to plausibly deny. So he says, what do you mean I don't have a legally protected interest that's threatened? Here, I have to pay $77 million. And your response to that? Well, one— Nothing in the record on it. There's nothing that indicates he has to pay $77 million. If the tribunal's award bound him to pay $77 million to reimburse Mexico, that would be a different issue. But that's not the factual situation that we're presented with here. There's no case that Mr. Cardenas has cited or that we've seen in which someone in the position of Mr. Cardenas has the ability to intervene. He does not have the legal interest. The cases that are cited involve non-parties who are bound by the award. In one case, a non-party had to pay $1 million pursuant to the award. There was a case involving a union where the international portion of the union was bound by a decision involving one of its local unions, local chapters. That is not at all the circumstances that are presented here. Anything more, Judge Shouse? No. All right. Thank you. Thank you. And did anybody reserve any time? I do. I have a minute each. A minute each. Okay. Mr. Becker? Yes, Your Honor. This issue that counsel for Lyon raised about, you know, seven or eight categories aren't protected or what have you. First of all, again, the scope of what parties can seek under Chapter 11 in a claim is very well and narrowly defined. Parties had their intention, and it's clear. Second of all, that's not an issue that was discussed in the award. And people, similar to the district court, they're trying to add a gloss to the award itself to say, well, this is what the arbitrators must have been thinking, or here's another justification for their ruling. And we would submit to you that's not proper, that the award has to stand on its own four corners. And if the arbitrators, you know, they can't supplement the arbitrators' reasoning by saying, well, we wish the NAFTA was broader or, you know, we want to second-guess what the U.S. and Mexico and Canada negotiated. That was the only point we wanted to make. All right. Thank you. And a minute by Mr. Parada. Your Honors, I would bring your attention to tab 19 of the joint appendix. And there you will see that the expropriation decree that specifically targets Mr. Cardenas and his properties because of the responsibility assigned to him in the award as the perpetrator of fraud. But let me just tell you something else. This case for Mr. Cardenas is not only about the money. That is half of the problem. The problem is the lack of due process given to him has ruined his reputation. He's already been in jail three times because of the allegations that the lion made in criminal proceedings against him using the same measures in the award. So for him— You can't be right that it's just the arbitration award. I've never heard of a criminal prosecutor relying on a private arbitration. I did not. And it's factual findings establishing criminal activity. And I assume that Mr. Cardenas had due process in any criminal proceeding for which he was— Your Honor, I may have misspoken. It was not—the criminal proceedings were not predicated on the award. But I was just talking about his—that was for the money part. But that has also—the award has damaged his reputation. Aside from that, Mr. Cardenas, because of criminal accusations by the lion, has been in prison and in jail three times. Not—it was even before the award. And he presumably—I mean— He was—he's been exonerated. In all the Mexican court proceedings where Mr. Cardenas has been present, he has been found not guilty, exonerated completely. But he—it and the award have caused a lot of damage to his reputation in addition to what you will see in tab 19. All right. Thank you. Thank you. Thank you, Your Honor. The case is submitted.
judges: Pillard; Walker; Childs